UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN DAVID HEWITT-EL,

                Petitioner,                    Case Number: 2:19-10652
                                                   HONORABLE SEAN F. COX

v.

LES PARISH,

                Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jonathan David Hewitt-El filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for armed robbery, Mich. Comp. Laws § 750.529; assault with intent to cause great bodily harm less than murder, § 750.84; and possession of a firearm during the commission of a felony (felony firearm), § 750.227b. Defense counsel failed to investigate Petitioner's alibi defense, failed to call key witnesses to testify, and failed to move for the suppression of highly prejudicial prior convictions based upon a misunderstanding of the law. Petitioner was prejudiced by counsel's failures. The state court's determination to the contrary was an unreasonable application of clearly established Supreme Court precedent.

The Court grants a conditional writ of habeas corpus.

## I.    Factual Background and Procedural History

Petitioner's convictions arise from a robbery and shooting at the home of James

Lemon in Detroit.  The Michigan Court of Appeals summarized the evidence presented at

trial as follows:

> The victim, James Lemon, testified that defendant called him on February 14,
> 2010, about coming over to visit. Defendant later arrived at Lemon's house,
> accompanied by a man he introduced as Terry. Lemon testified that Terry
> pulled a gun on him and defendant demanded Lemon's money. When Lemon
> tried to escape through a window, defendant told Terry to shoot Lemon and
> shots were fired. Lemon was shot as he went through the window.
>
> Defendant denied being at Lemon's house. According to defendant, Lemon
> had a drug habit and defendant had previously introduced Lemon to a dealer
> named Steve, whom Lemon knew as Terry.  According to defendant, on the
> day of the offense, Lemon called defendant at home looking for drugs and
> defendant told him to call one of the people defendant had introduced him to.
> Defendant stated that Lemon later called him back to report that he had spoken
> to Terry, who was on his way to Lemon's house.  Defendant testified that later
> in the month after the offense, a man named Craig called and "asked about the
> whereabouts of the guy Terry and [said] that if I didn't give Mr. Lemon the
> full name and address of Terry, then he would hold me responsible, seeing I'm
> the one who introduced them."

*People v. Hewitt-El*, No. 332946, 2018 WL 2121478, at *1 (Mich. Ct. App. May 8, 2018).

Following a jury trial in Wayne County Circuit Court, Petitioner was sentenced to 7

to 20 years for the assault with intent to do great bodily harm less than murder conviction,

3 to 10 years for the felon-in-possession conviction, 171 months to 25 years for the armed

robbery conviction and two years for the felony-firearm conviction.  *Id.*

Petitioner filed an appeal of right in the Michigan Court of Appeals raising two

claims: (i) the trial court erred in denying his motion for a new trial; and (ii) counsel was

ineffective regarding the handling of Petitioner's prior felony convictions.  The Michigan

Court of Appeals affirmed Petitioner's convictions.  *People v. Hewitt-El*, No. 299241, 2011

2

WL 4129523 (Mich. Ct. App. Sept. 15, 2011).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Hewitt-El*, 490 Mich. 974 (Mich. Dec. 28, 2011).

Petitioner then filed a motion for relief from judgment in the trial court asserting that he received ineffective assistance of trial and appellate counsel and that insufficient evidence supported his felon-in-possession of a firearm conviction.  The trial court held a *Ginther* hearing[1] on Petitioner's ineffective assistance of trial and appellate counsel claims.  The trial court then granted Petitioner's motion, vacated his convictions, and granted him a new trial. *See* 11/3/15 Opinion, *People v. Hewitt-El*, No. 10-002907 (ECF No. 6-27, PageID.1717-1722).  The State sought leave to appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals granted the application, vacated the trial court's order, and remanded the case to the trial court because the trial court failed to apply the correct standard of review under Mich. Ct. R. 6.500 *et seq.  See People v. Hewitt-El*, No. 330403 (Mich. Ct. App. Dec. 21, 2015).

On remand, the trial court again granted Petitioner's motion for relief from judgment. *See* 4/25/2016 Opinion, *People v. Hewitt-El,* No. 10-002907 (ECF No. 6-27, PageID.1706-1711).  On appeal, the Michigan Court of Appeals reversed the trial court's decision.  *People v. Hewitt-El*, No. 332946, 2016 WL 6825877, at *8 (Mich. Ct. App. Nov. 17, 2016).  The

---

[1]  In Michigan, a *Ginther* hearing is an evidentiary hearing regarding a claim of ineffective assistance of counsel.  *See People v. Ginther*, 390 Mich. 436 (1973).

Michigan Supreme Court vacated the court of appeals' opinion because the court of appeals incorrectly held that certain claims had previously been decided against Petitioner. *People v. Hewitt-El*, 501 Mich. 1031 (Mich. March 30, 2018).  The Michigan Supreme Court remanded the case and directed the court of appeals to review the "claims of error ... under the proper standard, namely reviewing the Wayne County Circuit Court's decision to grant the motion for relief from judgment for an abuse of discretion and reviewing its factual findings for clear error." *Id.*

On remand, the Michigan Court of Appeals again reversed the trial court's grant of Petitioner's motion for relief from judgment in an unpublished opinion. *People v. Hewitt-El*, No. 332946, 2018 WL 2121478, at *6 (Mich. Ct. App. May 8, 2018).  Petitioner sought leave to appeal that decision in the Michigan Supreme Court, but the Court denied the application because it was not persuaded that the questions presented should be reviewed.  *People v. Hewitt-El,* 913 N.W.2d 331 (Mich. 2018).

Petitioner then filed this petition for a writ of habeas corpus.  He raises this claim:

> Petitioner was denied his Sixth Amendment right to effective assistance of counsel; the Michigan Court of Appeals' decisions reversing the trial court's order granting a new trial is contrary to and involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court as well as an unreasonable determination of the facts?

## II.    Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.  Further, "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

A state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

Petitioner seeks habeas relief on the ground that defense counsel was ineffective in three ways.  First, defense counsel failed to investigate his defense and present alibi witnesses.  Second, counsel did not move to suppress details of Petitioner's prior felony convictions and elicited detailed testimony from Petitioner about the prior convictions. Finally, Petitioner claims counsel was ineffective for failing to present evidence of his physical disability.

Respondent argues that Petitioner's ineffective assistance of counsel claims are procedurally defaulted.  The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006).

The Michigan Court of Appeals denied relief under Mich. Ct. R. 6.508(D)(3). Enforcement of MCR 6.508(D)(3) constitutes an independent and adequate state ground sufficient to invoke the procedural default bar. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir.

6

2012). The Court, therefore, may consider the merits of Petitioner's ineffective assistance of trial counsel claims only if he shows cause for failing to raise them on direct appeal and that he would be prejudiced if the Court fails to consider his claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner asserts that his appellate counsel's ineffectiveness establishes cause to excuse the default.

When an ineffective assistance of counsel claim is asserted as cause to excuse a procedural default, the ineffective assistance claim is reviewed *de novo*:

> "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). In particular, "[t]he latter must meet the higher AEDPA standard of review, while the former need not." *Id*. at 237; *see also, e.g., Smith v. Warden, Toledo Corr. Inst*., 780 F. App'x 208, 225 (6th Cir. 2019); *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). Thus, we review *de novo* the question of whether ineffective assistance of appellate counsel excuses [the petitioner's] procedural default.

*Chase v. MacAuley*, 971 F.3d 582, 591-92 (6th Cir. 2020).

The Sixth Amendment right to counsel guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id*. at 687-88. The *Strickland* standard is a difficult one to satisfy. On appeal, "counsel has no obligation to raise every possible claim." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). "[T]he decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment" and "[c]ounsel's performance is strongly presumed to be effective." *Id*. (quoting *Scott v. Mitchell*,

7

209 F.3d 854, 880 (6th Cir. 2000)).

To evaluate whether Petitioner's appellate counsel performed deficiently by failing to properly raise the ineffective assistance of trial counsel claims raised in the petition, the Court must "assess the strength of the claim[s] that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). As discussed below, the Court holds that Petitioner's attorney was ineffective for failing to properly investigate the case and to call witnesses and for his handling of Petitioner's prior felony convictions. Appellate counsel's failure to properly raise these claims on appeal when the strength of the claims was patently clear establishes cause and prejudice to excuse Petitioner's default.

## A.    Failure to Investigate and Call Witnesses

Petitioner's conviction rested on the identification testimony of the victim, James Lemon. Immediately after the shooting, Lemon identified Petitioner and "Terry" as the men who entered his apartment.[2] Lemon never wavered from his identification of Petitioner. Lemon testified that the shooting occurred at approximately 1:30, but police reports indicated the shooting occurred earlier, shortly after 12:30. Petitioner's defense rested solely on his own testimony that he did not accompany "Terry" to Lemon's house and that he was at home when the shooting occurred.

Petitioner maintains that defense counsel failed to investigate witnesses who could have bolstered his defense. He and his family members informed defense counsel that these

---

[2] Terry's identity was never ascertained.

four witnesses would have provided an alibi for the time when the shooting occurred: Sheila Jackson (Petitioner's then-fiancee), Leon Hewitt (Petitioner's son), Mark McCline, and "Kelly." But counsel failed to call any of these witnesses. He also claims that a fifth witness, "Craig,"[3] would have explained why Lemon falsely identified Petitioner as one of the robbers, but counsel never made any effort to contact Craig.

### 1.    *Ginther* Hearing Testimony

The trial court held an evidentiary hearing over the course of three days regarding Petitioner's ineffective assistance of counsel claims. Among the witnesses who testified at the *Ginther* hearing were Mark McCline, Leon Hewitt, Petitioner, and defense counsel David Cross.

Mark McCline testified that a mutual friend, Michael Ballard, put him in touch with Petitioner because he needed someone to install a radio in his wife's car. On February 14, 2010, at approximately 12 - 12:30 p.m., he arrived at Defendant's apartment to have the radio installed. (ECF No. 6-15, PageID.795-96, 801-02.) McCline remembered the day's events because it was his first Valentine's Day with his wife. (*Id.* at 795-96.) Defendant installed the radio and was still present when McCline left the apartment at about 1:15. (*Id.* at 802.) Petitioner's fiancee Sheila Jackson called McCline multiple times in the months following Valentine's Day. She asked whether he would be willing to talk to police or a lawyer about what time he was with Petitioner on Valentine's Day. (*Id.* at 804-05.) He agreed to do so

---

[3] Kelly and Craig are referred to only by their first names throughout the state court and federal pleadings.

but no one ever contacted him.  (*Id.* at 797.)

Leon Hewitt testified that he visited his father on Valentine's Day 2010.  He arrived at approximately 12:30 or 12:45 and  stayed until about 2:00 p.m.  (ECF No. 6-14, PageID.698-99.)  Leon told defense counsel Cross that he would be willing to testify on Petitioner's behalf and that he had been at Petitioner's house on the day of the shooting.  (*Id.* at 700.)  Cross told Leon he did not want to call him to testify because he thought Leon would lie to protect his father.  (*Id.*)

Petitioner testified that he met with Cross twice before trial, for thirty or forty minutes each time.  (ECF No. 6-16, PageID.818-19.)  He asked Cross to contact his alibi witnesses, specifically naming Mark McCline, Sheila Jackson, Leon Hewitt, Kelly, and Craig as potential witnesses.  (*Id.* at 819.)  Cross spoke to Jackson, but did not contact any other potential witness because, Cross informed Petitioner, it was the responsibility of Petitioner and his family to have the potential witnesses contact Cross.  (*Id.*)  Cross did not believe Jackson could be an alibi witness because the police report stated the shooting occurred at 12:30 and Jackson did not arrive home from church until about 1:00.  (*Id.* at 822.)  Although the police report indicated the incident occurred at 12:30, Lemon testified at the preliminary examination and trial that the shooting occurred at about 1:30 or 1:45.  (*Id.* at 820.)  Cross seemed unaware of this discrepancy and of the mistaken belief that the first time the 1:30 time frame was mentioned was at the trial.  Cross clearly did not consider the impact the different time estimate might have on the value of Petitioner's alibi witnesses.

David Cross testified that he was "technically retained" to represent Petitioner.  (ECF

No. 6-15, PageID.747.)  Petitioner's brother Robert Hewitt and Cross were neighbors and good friends.  (*Id.* at 762.)  Cross handled Petitioner's arraignment at Robert's request with the understanding that the family would retain a different attorney going forward.  (*Id.*)  The family never did and Cross felt "compelled" to continue representing Petitioner.  (*Id.*)  Cross was not paid for his services.  (*Id.*)  Cross testified that Petitioner gave him the names of three witnesses who could provide alibis.  (*Id.* at 748.)  One was Sheila Jackson and the other two were just first names, one of which was Kelly and the other he could not recall.  (*Id.*)  Cross determined that Jackson would not be a good witness and may have refused to testify, though he was not certain on that point.  (*Id.* at 763.)  He also felt that if Jackson testified there was "a potential for perjury there."  (*Id.*)  He maintained that he did not speak to the other witnesses because he did not have sufficient contact information for them and that he told Petitioner it would be the witnesses' responsibility to contact him.  (*Id.* at 748-49.)  He did not request the assistance of an investigator.  (*Id.*)  He denied that Leon Hewitt had offered to testify on his father's behalf.  (*Id.* at 750.)

### 2.    State Court Decisions

Following the evidentiary hearing, the trial court granted Petitioner a new trial, finding defense counsel ineffective in three respects including counsel's failure to investigate or present alibi witnesses.  (ECF No. 6-28, PageID.3237-42.)  The trial court concluded "[w]hile attorney Cross believes he performed strategically and without errors, this Court finds that his opinion of himself is inflated and unreasonable and if not for the numerous aforementioned errors, there is a reasonable probability the result of the proceeding would

have been different." (*Id.* at 3241-42.)  The Michigan Court of Appeals vacated the trial

court's opinion and remanded for reconsideration because the trial court failed to apply the

standards for ruling on a motion for relief from judgment under Mich. Ct. Rule 6.500 *et seq.*

(ECF No. 6-26, PageID.1131.)  On remand, the trial court granted Petitioner's motion for

relief from judgment.  (ECF No. 6-27, PageID.1706-11).

The prosecutor appealed and the Michigan Court of Appeals reversed the trial court's

decision.  The Michigan Court of Appeals held that Petitioner was not denied the effective

assistance of counsel:

> Concerning alibi witnesses, defense counsel testified at the *Ginther* hearing,
> and stated in his affidavit, that he had received no workable information
> concerning two of the witnesses identified by defendant. Accordingly, defense
> counsel was unable to contact them.    Additionally, defense counsel
> interviewed a third potential alibi witness, but found that her testimony "would
> not have been credible," and in fact, given the opportunity to testify, she may
> have perjured herself.  Therefore, we again conclude that defense counsel's
> failure to call alibi witnesses was not objectively unreasonable, and therefore,
> appellate counsel was not ineffective for failing to raise the claim on direct
> appeal.  *See People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120
> (2010) ("Failing to advance a meritless argument or raise a futile objection
> does not constitute ineffective assistance of counsel.").

*People v. Hewitt-El*, No. 332946, 2018 WL 2121478, at *6 (Mich. Ct. App. May 8, 2018).

When evaluating claims adjudicated on the merits in state court, the Court must give

AEDPA deference to the last state court to issue a reasoned opinion on the issue.  *Hill v.*

*Shoop*, 11 F.4th 373, 384 (6th Cir. 2021).  Here, that is the Michigan Court of Appeals'

decision.

### 3.    Performance Prong

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Michigan Court of Appeals' decision that counsel's performance was not deficient is an unreasonable application of *Strickland*.

Petitioner presented testimony and affidavits to support his contention that he and other family members advised Cross about important alibi witnesses, most notably McCline and Leon Hewitt. If believed, the witnesses' testimony substantially rebutted Lemon's testimony. The same trial court judge presided over the trial and the *Ginther* hearing and was, therefore, in a unique position to assess the credibility of the witnesses. He found Cross's testimony not credible and Cross's preparation for trial and the evidentiary hearing severely lacking. Rather than relying on the trial court's credibility determination, the Michigan Court of Appeals undertook its own credibility determination and held that counsel was not deficient. The state court's decision to undertake its own credibility determination is inconsistent with "[t]he law of the Supreme Court, the Sixth Circuit, and the state of Michigan [which] all call for deference to trial judges on matters of witness credibility ..." *McPherson v. Woods*, 506 F. App'x 379, 388-89 (6th Cir. 2012) (citing *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) ("The trial court's [credibility] determination is entitled to great deference, and must be sustained unless it is clearly erroneous.") (internal citation and quotation marks omitted); *Fields v. Bagley*, 275 F.3d 478, 485 n. 5 (6th Cir.2001) ("When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. If the trial court's findings are supported by

13

competent and credible evidence, then the appellate court must accept them.") (internal citation omitted); *People v. Sexton*, 461 Mich. 746, 609 N.W.2d 822, 825 (2000) ("[I]f resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters.")).  Despite the deference owed to the trial court, the Michigan Court of Appeals credited Cross's testimony at the evidentiary hearing that Petitioner identified only three potential witnesses, and that the information supplied for two of the witnesses was so lacking that counsel could not even begin to investigate them as potential witnesses.  The state court focused only on Cross's self-serving testimony, ignored the trial court's credibility determinations and failed to account for contrary testimony offered by other witnesses.

Cross characterized an alibi defense as Petitioner's "primary defense."  (ECF No. 6-15, PageID.752.)  Yet he did nothing to investigate that defense.  Although the decisions of trial counsel receive great deference under *Strickland*, "there must be some limit to this deference." *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).  "[T]he investigation leading to the choice of a so-called trial strategy must itself have been reasonably conducted lest the 'strategic' choice erected upon it rest on a rotten foundation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007).  The Court sees no reasonable justification for defense counsel's failure to actively investigate Petitioner's witnesses.  The Michigan Court of Appeals' holding to the contrary "only focuses on trial counsel's self-serving testimony, [] neglecting parts of his testimony that were vague, inconsistent, and found not to be credible by the trial court." *Hewitt-El*, 502 Mich. at 332 (Bernstein, J. dissenting).  The state court's

14

resolution of *Strickland's* performance prong was unreasonable.

### 4.    Prejudice

The Court turns to the prejudice prong and concludes that Petitioner has established a "'substantial' likelihood of a different result" absent counsel's errors. *Cullen*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).    To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

Courts have "recognized that when trial counsel fails to present an alibi witness, '[t]he difference between the case that was and the case that should have been is undeniable.'" *Caldwell v. Lewis*, 414 Fed.Appx. 809, 818 (6th Cir.2011) (alteration in original) (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir.2007)).   To be sure, the testimony of Petitioner's potential alibi witnesses would not have been without inconsistencies or weaknesses.   But Petitioner does not have to establish that the jury would have believed the witnesses.   The jury may have been unpersuaded by the alibi witnesses after hearing their testimony and judging their credibility, but "there certainly remained a reasonable probability that the jury would not have" discredited the potential witnesses and that is sufficient to show prejudice under *Strickland*. *Ramonez*, 490 F.3d at 491.

The impact of defense counsel's error must be considered in the context of the totality of the evidence presented. *See, e.g., Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion

15

only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). The credibility of Petitioner and Lemon was central to this case. There was no physical or testimonial evidence (other than Lemon's) identifying Petitioner as the shooter. If the jury had heard the alibi testimony of McCline and Leon Hewitt there is a reasonable probability that they, like the trial court judge, would have found their testimony credible. The Court finds that Petitioner was prejudiced by counsel's deficient performance and that the Michigan Court of Appeals' decision to the contrary was an unreasonable application of Supreme Court precedent.

Finally, the Court addresses appellate counsel's failure to raise this claim on direct appeal. Appellate counsel testified at the *Ginther* hearing that Petitioner asked him to contact Sheila Jackson and Leon Hewitt because they should have been called as alibi witnesses. (ECF No. 6-14, PageID.668-69.) He was unable to contact Jackson and did not try to contact Leon Hewitt because he did not have a phone number or address for Leon. (*Id.*) He did not recall whether he attempted to obtain contact information for Jackson or Leon from defense counsel. (*Id.* at 669.) Appellate counsel's failure to sufficiently investigate and raise Petitioner's alibi-related ineffective assistance of counsel claim was constitutionally deficient, and therefore establishes cause to excuse his default of this claim.

Further, there is a reasonable probability that, but for appellate counsel's omission of this claim, Petitioner would have received relief from the Michigan Court of Appeals or

Michigan Supreme Court.[4]  Petitioner, therefore, has shown prejudice to excuse the default of this claim.

### B.   Prior Felony Convictions

Petitioner also received ineffective assistance of counsel because defense counsel failed to move to suppress Petitioner's five prior convictions for armed robbery under Michigan Rule of Evidence 609 and, on direct examination, elicited testimony from Petitioner that he had been convicted of prior felonies for which he had been imprisoned for 19 years.  (ECF No. 6-7, PageID.447-78.)  This opened the door for the prosecution to elicit testimony from Petitioner that his five prior felony convictions were for armed robbery.  (*Id.* at 459-60.)

The Michigan Court of Appeals held that counsel's performance fell below an objective standard of reasonableness, but that Petitioner was not prejudiced by the error. *Hewitt-El*, 2018 WL 2121478 at *5.  The court reasoned that counsel could have stipulated that Petitioner had previously been convicted of a felony conviction for the purpose of the felon-in-possession charge.  *Id.*  "Had defense counsel so stipulated, any mention of specific convictions could have been avoided."  *Id.*  Further, defense counsel performed deficiently by failing to ask the court to apply the balancing test set forth in Mich. R. Evid. 609(a)(2)(B) to limit admission of the prior felonies or, at the very least, the nature of the prior felonies,

---

[4] Indeed, Justice Bernstein of the Michigan Supreme Court, joined by Justice McCormack, would have granted Petitioner relief because "trial counsel's performance was deficient in multiple regards" and the "Court of Appeals is the one that has committed legal error here, not the trial court."  *Hewitt-El*, 913 N.W.2d at 331-32, 333.

as impeachment evidence because they were unfairly prejudicial.  *Id.*  The Michigan Court

of Appeals held that if the trial court been asked to undertake that balancing test:

> [I]t is probable that the trial court would have confined the prosecution's use
> of defendant's criminal history. *Allowing the jury to learn that defendant had*
> *previously been convicted of armed robbery five times substantially increased*
> *the risk of unfair prejudice to defendant, particularly where defendant was*
> *presently charged with armed robbery.*  Accordingly, we conclude that defense
> counsel's performance fell below an objective standard of reasonableness in
> that regard.

*Id.* (emphasis supplied).

Despite finding that admission of Petitioner's five previous armed robbery convictions

"substantially increased the risk of unfair prejudice", the Michigan Court of Appeals

nevertheless held that Petitioner was not prejudiced by counsel's deficient performance.  *Id.*

at *6.  The state court reasoned:

> Finally, we note that the prosecution had a strong case, particularly in light of
> Lemon's "unwavering testimony that defendant, a person he knew and who
> had visited his house in the past, committed the offenses."  Accordingly, even
> when considering defense counsel's ineffective assistance regarding
> defendant's prior convictions, defendant fails to establish the reasonable
> likelihood that but for defense counsel's deficiency, he would have been
> acquitted. MCR 6.508(D)(3)(b)(i).

*Id.*

The Michigan Court of Appeals' prejudice determination is an unreasonable

application of *Strickland.*  Courts have long recognized the dangers of admitting evidence

of prior similar convictions.  "When jurors hear that a defendant has on earlier occasions

committed essentially the same crime as that for which he is on trial, the information

unquestionably has a powerful and prejudicial impact."  *United States v. Jenkins*, 593 F.3d

480, 486 (6th Cir. 2010) (quotation omitted).

The Sixth Circuit's decision in *Byrd v. Trombley*, 352 F. App'x 6 (6th Cir. 2009) is instructive in assessing the reasonableness of the state court's application of *Strickland*. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) ("[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."). Byrd sought habeas corpus relief from his criminal sexual conduct conviction on the ground that his defense attorney was ineffective for eliciting testimony of his prior forgery conviction. *Id.* at 8-9. The Court of Appeals held that counsel performed deficiently because the prior conviction was likely inadmissible under state law and Byrd was prejudiced by the error. *Id.* at 11-12. The Court of Appeals' discussion of the prejudice prong is particularly instructive:

> Here, we believe that there is a reasonable probability that, but for counsel's introduction and failure to challenge the admissibility of Byrd's forgery conviction, the jury would have found Byrd not guilty. The jury's verdict of whether Byrd was guilty of criminal sexual assault depended almost entirely on whose version of the facts the jurors believed. While both sides presented testimony about the relationship between T.R. and Byrd and the events prior to and after the alleged assault, the only evidence that Byrd committed a crime was T.R.'s testimony. Likewise, the only direct evidence presented that Byrd did not commit the crime was his own testimony at trial. Because the outcome turned on the jury's determination of whose testimony was more credible, there is a reasonable probability that Byrd's prior conviction affected the jury's opinion of his credibility and, accordingly, the verdict. *See, e.g., United States v. Sims*, 588 F.2d 1145, 1150 (6th Cir.1978) (holding that, when a previous trial had resulted in a hung jury and the defendant's "credibility was essentially the whole case," the introduction of defendant's prior convictions discredited defendant's testimony and led to a guilty verdict). Thus, there is a reasonable probability that defense counsel's introduction of, and failure to object to,

> Byrd's prior conviction – when credibility was essentially Byrd's entire defense – affected the outcome of the trial. ...

*Byrd v. Trombley*, 352 F. App'x 6, 12-13 (6th Cir. 2009)

As in *Byrd,* in this case the outcome turned on the jury's credibility determination. While, unlike *Byrd,* this case did not involve a previous hung jury, the nature and number of Petitioner's prior convictions were far more prejudicial than those in *Byrd.* There was a grave risk that admission of Petitioner's five prior armed robbery convictions may have led the jury to conclude that, if he did it five time before, he did it again. The Michigan Court of Appeals recognized this danger: "Allowing the jury to learn that defendant had previously been convicted of armed robbery five times substantially increased the risk of unfair prejudice to defendant, particularly where defendant was presently charged with armed robbery." *Hewitt-El*, 2018 WL 2121478 at *5. Despite this, the court of appeals held that Petitioner was not prejudiced by the error. *Id.* In so holding, the court of appeals simply stated that the prosecution had a strong case. *Id.* The state court failed to acknowledge that the case turned on which witness, Lemon or Petitioner, the jury found more credible. Where there was no physical evidence, no ballistics or DNA evidence and only the testimony of a single witness, the victim, to convict Petitioner, there is a reasonable likelihood that evidence of Petitioner's five prior felony convictions impacted the jury's credibility determination and, consequently, the verdict. The Michigan Court of Appeals' decision to the contrary is an unreasonable application of *Strickland.*

Appellate counsel raised this claim on direct review, but the Michigan Court of

Appeals found the claim abandoned because the merits of the claim were not adequately addressed in the brief.  (ECF No. 6-24, PageID.1022.)  Appellate counsel's failure to properly brief the issue fell outside the wide range of reasonably competent assistance. Further, Petitioner was clearly prejudiced by counsel's failure to properly raise a meritorious claim.  Appellate counsel's ineffectiveness establishes cause and prejudice to excuse the procedural default of this ineffective assistance of counsel claim.

### C.    Failure to Call Medical Witnesses

Finally, Petitioner argues that counsel was ineffective for failing to present testimony to corroborate his testimony about his physical disabilities.  Petitioner was in a car accident in November 2009.  According to his trial testimony, the accident damaged his neck and spine, limiting his mobility and causing back and leg pain which made it difficult for him to walk for long periods of time.  (ECF No. 6-7, PageID.450, 463.)  He used a crutch or cane since the time of the accident.  (*Id.*)  It was undisputed that one of the perpetrators left Lemon's home through a first-floor window.  Petitioner argues that counsel should have presented medical testimony to show that he would have been unable to exit the home through the window.

The Michigan Court of Appeals held that counsel's decision not to call medical experts was a reasonable trial strategy:

> Defense counsel testified at the *Ginther* hearing that defendant's alibi was that he was not at Lemon's house on the day of the crime. Therefore, testimony regarding defendant's physical limitations was irrelevant.

*Hewitt-El*, 2018 WL 2121478, at *6.

The conclusion that Petitioner's physical limitations were irrelevant based upon his alibi defense is unsound. A defense of physical impossibility would have supported Petitioner's claim that he was not at Lemon's house. It was consistent with, not irrelevant to, an alibi defense. Nevertheless, habeas relief is not warranted on this claim because Petitioner was not prejudiced by the absence of medical expert testimony.

At the *Ginther* hearing, Petitioner presented two witnesses to testify about his physical condition, Dr. Dawit Teklehaimanot, a physical medicine rehabilitation specialist, and Bejoice Thomas, Petitioner's physical therapist. Dr. Teklehaimanot treated Petitioner from December 4, 2009 through February 16, 2010. (ECF No. 6-15, PageID.723-34, 728.) He prescribed pain medication and physical therapy. Dr. Teklehaimanot testified that it would have been possible for Petitioner to step over a two feet high window ledge to exit a building if it were urgent that he do so. (ECF No. 6-15, PageID.734-35.) If Petitioner jumped out a window and fell four feet, "it is very possible it will hurt." (*Id.* at 735.)

Bejoice Thomas treated Petitioner a total of twenty times from December 2, 2009 through March 3, 2010. (*Id.* at 740.) Thomas was asked whether Petitioner could have gotten over a one or two foot barrier which was the width of a window frame. He testified that he was not comfortable answering that question. (*Id.* at 745.)

At most, this testimony shows that if Petitioner had exited Lemon's house through the window it would have been painful and perhaps difficult. Neither witness's testimony would have shed light on the relevant issue – whether Petitioner was physically capable of exiting Lemon's house through a first-floor window. Additionally, Thomas testified that Petitioner

22

was not walking with a cane or crutch when he arrived for his appointments (*id.* at 742-43), which was inconsistent with Petitioner's trial testimony that he walked with a crutch or cane since the accident. (ECF No. 6-7, PageID. 450-51.) Dr. Teklehaimanot's medical records also include a memorandum noting that, on December 7, 2009, five days after Petitioner's first appointment, Petitioner requested another prescription for Vicodin because someone had stolen his medication. (ECF No. 6-28, PageID.4756.) Dr. Teklehaimanot admonished Petitioner for being careless with his medicine and warned that no further replacement prescriptions would be issued. *Id.* The medical testimony considered in its totality would not have shown it was impossible for Petitioner to exit Lemon's house through a window, and it may caused the jury to infer that Petitioner was attempting to obtain additional Vicodin (the same drug Lemon was seeking on the day he was shot) under false pretenses.

Therefore, Petitioner's ineffective assistance of counsel claim based on the failure to present medical testimony does not warrant habeas relief.

## IV.  Conclusion

Petitioner was denied his right to the effective assistance of trial and appellate counsel, which prejudiced him both at trial and on appeal. The state court's decision to the contrary was an unreasonable application of clearly established Supreme Court precedent.

Accordingly, the Court CONDITIONALLY GRANTS the petition for writ of habeas corpus. The State must either release Petitioner, or institute proceedings to retry him within 120 days of the filing date of this Order. If the State fails to do so, Petitioner may move for

an unconditional writ seeking immediate release from custody.

      **SO ORDERED**.

                            s/Sean F. Cox
                            Sean F. Cox
                            United States District Judge

Dated:  February 15, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 15, 2022, by electronic and/or ordinary mail.

                            s/J. McCoy
                            Case Manager