UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Jonathan David Hewitt-El,

        Petitioner,                      Case Number: 19-10652
                                                      Honorable Sean F. Cox

v.

Les Parish,

        Respondent.
_____/

**<u>OPINION AND ORDER GRANTING PETITIONER'S
MOTION FOR RELEASE ON BOND PENDING APPEAL</u>**

This matter is before the Court on Petitioner Jonathan David Hewitt-El's motion for release on bond pending appeal. (ECF No. 14.) For the reasons explained below, the Court grants Petitioner's motion and orders him released on bond subject to the strict conditions detailed in a forthcoming order. Petitioner is cautioned that the Court will strictly enforce all bond conditions.

**<u>Background</u>**

On February 15, 2022, the Court granted Jonathan David Hewitt-El a conditional writ of habeas corpus because he received ineffective assistance of trial counsel and the state court's decision to the contrary was an unreasonable application of clearly-established Supreme Court precedent. *See Hewitt-El v. Parish*, No. 2:19-10652, 2022 WL 468950 (E.D. Mich. Feb. 15, 2022). The Court

ordered Petitioner released from state custody unless the State of Michigan initiates proceedings to retry him within 120 days. *Id.* at *11.

Respondent appealed the decision (ECF No. 11) and moved to stay the Court's order pending appeal. (ECF No. 16.) Petitioner filed a motion for release on bond pending appeal. (ECF No. 14.) On May 10, 2022, the Court granted Respondent's motion to stay and deferred a decision on the motion for bond pending receipt of a report from Pretrial Services. (ECF No. 18.)

On August 25, 2022, an in-person hearing was held on Petitioner's motion. Petitioner was represented by counsel and attended the hearing in person. He presented three witnesses: Anna Kohn, Leon Hewitt, and Wolfgang Mueller.

Anna Kohn testified that she is the leader of the reentry and parole team for the State Appellate Defender's Office (SADO). She helps offenders prepare comprehensive plans for reentry into the community upon release. In this case, she met with Petitioner and assisted him in preparing a reentry plan. The plan focused on employment opportunities and securing post-release housing. Kohn helped Petitioner prepare a resume and laid the groundwork for his enrollment with an organization that provides paid training for individuals released from prison and assists them in securing permanent employment. Kohn investigated Petitioner's plan to live in a Detroit home owned by his son. She visited the home and determined it to be a habitable and suitable residence. Kohn would also assist

Petitioner in locating a substance abuse counselor. Finally, Kohn testified that, if bond were granted, Petitioner would have access to SADO's reentry assistance program for a couple of years.

Leon Hewitt, Petitioner's son, testified that he purchased and renovated a home in Detroit in anticipation of Petitioner's eventual release from prison. The home has running water, heat and electricity. If Petitioner is released on bond, he intends to allow Petitioner to live in the home rent-free until Petitioner finds a job.

Finally, Wolfgang Mueller testified that he is an attorney whose practice focuses on wrongful convictions cases. His testimony is relevant to Petitioner's need for protective custody and resulting placement in a Level IV facility.

## Legal Standard

Federal Rule of Appellate Procedure 23(c) governs Petitioner's motion. Rule 23(c) provides that "[w]hile a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge ordering the decision … orders otherwise – be released on personal recognizance, with or without surety." Fed. R. App. P. 23(c).

The United States Supreme Court has held that this rule "undoubtedly creates a presumption of release from custody in such cases." *Hilton v. Braunskill*, 481 U.S. 770, 774 (1987). That presumption, however, "may be overcome" upon a sufficient showing by the respondent. *Id.*

In making a custody determination under Rule 23(c), a court should "be guided not only by the language of the Rule itself but also by the factors traditionally considered in deciding whether to stay a judgment in a civil case." *Id.* at 776. Those factors are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured ...; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.*

The Supreme Court provided this additional guidance in *Hilton*:

> The interest of the habeas petitioner in release pending appeal, always substantial, will be strongest where the [traditional stay] factors … are weakest. The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control.

*Id.* at 777-78 (citations omitted).

## Discussion

Applying the *Hilton* factors, the Court holds that Petitioner is entitled to release on bond subject to the strict conditions detailed in a separately issued order.

Under the first *Hilton* factor, the Court must consider whether the State has

made a strong showing that it is likely to succeed on the merits.  The State has not done so.  Respondent argues that the appeal is likely to succeed because Petitioner's ineffective assistance of counsel claims are procedurally defaulted, his ineffective assistance of appellate counsel claim did not excuse the procedural default, and the Court failed to adhere to the deferential standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

In its opinion conditionally granting the writ, the Court addressed the procedural default issue and held that appellate counsel's ineffectiveness and the resulting prejudice excused the default.  In addition, the Court gave appropriate deference to the state court's decision as required by AEDPA.  Respondent also argues that, when deciding whether Petitioner was prejudiced by counsel's errors, the Court failed to give due consideration to the victim's identification of Petitioner as the shooter.  In fact, the Court gave significant consideration to this testimony and concluded that the testimony could have been called into doubt by presenting alibi witnesses.  Respondent's remaining arguments amount to re-argument of the issues addressed in the Court's opinion.  For the reasons stated in that opinion, the Court does not believe these arguments have merit.

The standard for granting habeas corpus relief is always difficult to meet and is particularly so where the petitioner must overcome a procedural default.

Nevertheless, while Respondent has a *chance* of success on the merits, Respondent has not shown a substantial likelihood of success on appeal. This factor, therefore, favors Petitioner.

Second, the Court must consider whether the State will be irreparably injured if Petitioner is released. To assess this factor, the Court considers the possibility that Petitioner will flee and the risk that he will pose a danger to the community. *Hilton*, 481 U.S. at 777. Respondent maintains that Petitioner's criminal history and institutional record weigh heavily against his release.[1]

Petitioner's institutional record, considered in context, does not support an inference of dangerousness. His institutional record qualifies him for placement in a Level I facility, the lowest security level within the MDOC. He is presently housed in a Level IV facility, the second-highest security level, because he is in protective custody. Petitioner's misconduct record also is not of particular concern. Since 2010, Petitioner has received twenty misconduct tickets. Nine of these misconduct tickets were for disobeying a direct order, issued when Petitioner refused to leave a segregation unit. Petitioner so refused because he feared for his life if he returned to the general population. Ultimately, Petitioner's fears were validated when an MDOC investigator concluded that Petitioner needed long-term

---

[1] Other than a brief reference to the risk of flight, Respondent does not argue that Petitioner is a flight risk and the Court sees no indication that Petitioner presents a significant flight risk.

protection. Petitioner has had only one Class I misconduct since 2010 and none of his misconducts have been for violent or assaultive behavior. Further, while Petitioner's criminal history is not insignificant, strict bond conditions and Petitioner's comprehensive reentry plan will mitigate potential risk to the public.

The Court may also consider the length of Petitioner's remaining sentence. "The State's interest in continuing custody … will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentencing remaining to be served." *Hilton*, 481 U.S. 777. Petitioner has roughly one year remaining on his minimum sentence and approximately twelve years remaining on his maximum sentence. Given that Petitioner already has served a substantial portion of his sentence, Respondent's interest in continued detention is not sufficiently strong to overcome the factors favoring Petitioner's release.

In sum, because concerns regarding Petitioner's criminal history can be adequately addressed by imposition of strict release conditions, the second *Hilton* factor weighs in favor of release.

Third, the Court must consider whether issuance of a stay will substantially injure Petitioner. This factor clearly favors Petitioner as he would suffer significant and substantial harm each day he remains imprisoned pursuant to a conviction rendered in violation of the Constitution. *See Newman v. Metrish*, 300

7

F. App'x 342, 344 (6th Cir. 2008) (characterizing ongoing imprisonment in violation of constitutional rights as a "continuing injury"); *Burdine v. Johnson*, 87 F. Supp. 2d 711, 717 (S.D. Tex. 2000) (remedying a prisoner's confinement in violation of the Constitution "is the very essence of the writ of habeas corpus").

Finally, the fourth *Hilton* factor requires consideration of where the public interest lies. "The public has a dual and sometimes competing interest in the State's sentences being enforced and in the State not incarcerating individuals in violation of the United States Constitution." *Poindexter v. Booker*, No. 05-CV-71607, 2007 WL 2780556, at *3 (E.D. Mich. Sept. 20, 2007). Here, the public's interest in enforcement of the State's judgments and sentences is substantially outweighed by the Court's conclusion that Petitioner's sentence was imposed in violation of his constitutional right to the effective assistance of counsel.

The public also has an interest in being protected from dangerous individuals. For all of the reasons set forth in discussion of the second *Hilton* factor, the Court finds that the risk of danger to the public will be sufficiently mitigated by the strict bond conditions the Court will impose.

## **Order**

For the reasons set forth above, Petitioner's Motion for Bond (ECF No. 14) is GRANTED subject to the forthcoming order setting conditions of release.

SO ORDERED.

Dated: September 16, 2022                s/Sean F. Cox
                                         Sean F. Cox
                                         U. S. District Judge